Daniel J. Maher
Edward J. Reilly
U.S. SECURITIES AND EXCHANGE COMMISSION
100 F Street NE
Washington, DC 20549
Phone: (202) 551-4737 (Maher)
Email: Maherd@sec.gov (Maher)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** : | | |
| : | | |
| *Plaintiff,* : | | |
| **v.** : | | |
| : | **CASE NO.    2:23-CV-3201** | |
| **HAL D. MINTZ, and** : | | |
| **SABBY MANAGEMENT LLC,** : | | |
| : | | |
| : | | |
| : | | |
| *Defendants.* : | | |
| : | | |
| : | | |


## SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ............................................................................................................ 3

I.   Legal Standards ................................................................................................ 3

II.  The SEC Has Provided Sufficient Detail regarding the Eight Appendix Transactions
     ........................................................................................................................ 4

     A.   Defendants Concede That the SEC Has Sufficiently Alleged Fraud ..................... 4

     B.   The SEC Is Not Required to Elaborate at Length on Every Fraudulent
          Transaction ............................................................................................... 4

     C.   The SEC's Allegations Meet Rule 9(b)'s Requirements .......................................... 6

          1.   The SEC Has Sufficiently Alleged Misrepresentations and Deceptive Conduct in
               Furtherance of the Fraud ...................................................................... 6

          2.   The SEC Has Alleged Defendants' Scienter as to the Appendix Transactions ...... 9

          3.   The SEC Has Properly Alleged That Defendants Are Both Liable for the Same
               Conduct ................................................................................................... 12

III. Defendants' Arguments as to Relief Based on Time-Barred Conduct are Improper
     and Premature .......................................................................................................... 14

IV.  Conclusion ......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 301 (S.D.N.Y. 2010) ............................................................. 16

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ........................................................................................ 12

*Crestwood Membranes, Inc. v. Constant Servs., Inc.*,
    No. 3:15-CV-537, 2016 WL 659105 (M.D. Pa. Feb. 17, 2016) ...................... 16

*Dicicco v. Citizens Fin. Grp., Inc.*,
    No. 15-cv-267, 2015 WL 5302767 (E.D. Pa. Sept. 10, 2015) ......................... 16

*Foglia v. Renal Ventures Mgmt., LLC*,
    754 F.3d 153 (3d Cir. 2014) .............................................................................. 5

*Ingris v. Borough of Caldwell*,
    No. 14-cv-855, 2015 WL 3613499 (D.N.J. June 9, 2015) ............................... 13

*Kennilworth Partners L.P. v. Cendant Corp.*,
    59 F. Supp. 2d 417 (D.N.J. 1999) ................................................................... 13

*Kokesh v. SEC*,
    581 U.S. 455 (2017) ........................................................................................ 15

*Ramirez v. STi Prepaid LLC*,
    644 F. Supp. 2d 496 (D.N.J. 2009) ............................................................... 5, 8

*Rolo v. City Investing Co. Liquidating Trust*,
    155 F.3d 644 (3d Cir. 1998) .............................................................................. 5

*Russo v. Thor Indus., Inc.*,
    No. 20-cv-10062, 2020 WL 5868801 (D.N.J. Oct. 1, 2020) ........................... 13

*SEC v. Bluepoint Inv. Counsel, LLC*,
    No. 19-cv-809, 2021 WL 719647 (W.D. Wis. Feb. 24, 2021) .......................... 5

*SEC v. Buntrock*,
    No. 02 C 2180, 2004 WL 1179423 (N.D. Ill. May 25, 2004),
    *aff'd sub nom. SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009) ......................... 16

*SEC v. Complete Bus. Solutions Group, Inc.*,
    538 F. Supp. 3d 1309 (S.D. Fla. 2021) .......................................................... 12

*SEC v. Constantin*,
    939 F. Supp. 2d 288 (S.D.N.Y. 2013) ........................................................... 11

*SEC v. Delphi Corp.*,
    No. 06-cv-14891, 2008 WL 4539519 (E.D. Mich. Oct. 8, 2008) ................... 16

*SEC v. Drake*,
    No. 2:17–cv–06204, 2017 WL 6507766 (C.D. Cal. Dec. 18, 2017) ............... 16

*SEC v. Fierro*,
    No. 20-cv-2104, 2020 WL 7481773 (D.N.J. Dec. 18, 2020) .......................... 14

*SEC v. Gentile*,
    939 F.3d 549 (3d Cir. 2019) ......................................................................... 15

*SEC v. Gu*, No.
    21-cv-17578, 2022 WL 2753478 (D.N.J. July 13, 2022) ............................. 3, 7

*SEC v. Honig*,
    No. 18-cv-8175, 2021 WL 276155 (S.D.N.Y. Jan. 27, 2021) ........................ 11

*SEC v. Hug*,
    No. 19-cv-16290, 2022 WL 855659 (D.N.J. March 22, 2022) ............... 4, 5, 8, 9

*SEC v. Kameli*,
    No. 17-c-4686, 2020 WL 2542154 (N.D. Ill. May 19, 2020) ......................... 15

*SEC v. Lucent Techs., Inc.*,
    363 F. Supp. 2d 708 (D.N.J. 2005) ............................................................... 13

*SEC v. Riel*,
    282 F. Supp. 3d 499 (N.D.N.Y. 2017) ........................................................... 12

*SEC v. Rivero*,
    No. 3:22-cv-1360, 2023 WL 2238700 (D.N.J. Feb. 27, 2023) ................... 9, 10

*SEC v. RRBB Asset Mgmt., LLC*,
    No. 20-12523, 2021 WL 3047081 (D.N.J. July 20, 2021) .......................... 8, 10

*SEC v. Tourre*,
    No. 10-cv-3229, 2014 WL 61864 (S.D.N.Y. Jan. 7, 2014) ........................... 12

*SEC v. Williams*,
    884 F. Supp. 28 (D. Mass. 1995) .................................................................. 15

*SEC v. Zouvas*,
    No. 3:16-cv-0998, 2016 WL 6834028 (S.D. Cal. Nov. 21, 2016)................................ 6, 8

*United States ex rel. Joshi v. St. Luke's Hosp., Inc.*,
    441 F.3d 552 (8th Cir. 2006) ........................................................................ 4, 5

*United States v. Banks*,
    115 F.3d 916 (11th Cir. 1997) ........................................................................ 15

## **<u>Statutes</u>**

18 U.S.C. § 3301 ........................................................................................................ 15

28 U.S.C. § 2462 ................................................................................................... 14, 15

## **<u>Rules</u>**

Fed. R. Civ. P. 8 ........................................................................................................ 3

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") submits this memorandum in opposition to Defendants' Motion to Dismiss (the "Motion," ECF No. 10). For the reasons set forth below, the Court should deny the Motion.

## PRELIMINARY STATEMENT

The Motion erroneously claims that the SEC has made "no effort at all to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to" eight of the alleged instances of "violative trading." (Mot. at 2, 8-14). This is false, but in doing so, Defendants concede they "are not asking the Court to dismiss the First Claim [for fraud] as it relates to the trading in all 10 issuers." (Mot. at 9.) Instead, Defendants argue that while the SEC provides two examples of their alleged misconduct, the other examples set forth in the Appendix are somehow deficient. (*Id*. at 2-3.) They urge the Court to "dismiss" that "subset" of the SEC's claims. (*Id*. at 9.) The applicable case law does not support such a conclusion, and these arguments fail as a matter of law. The Complaint's use of the Appendix to allege the fraud in this case is appropriate and meets the pleading standards.

Defendants, however, claim that the Appendix allegations are deficient for numerous reasons. Each are meritless. First, they argue that the SEC does not specify which statements were false or what the "specific fraudulent device or scheme is." (*Id*. at 10). In their view, the SEC failed to allege that, in connection with the Appendix transactions, "Defendants failed to deliver any shares following the alleged short sales[.]". (*Id*. at 11). Contrary to their argument, the Appendix and Complaint successfully plead all required information for the numerous transactions at issue in this case. In fact, courts have consistently recognized that a plaintiff may use a device such as the Appendix to appropriately plead fraud in cases like this.

1

Defendants also suggest that the SEC's allegations amount to "10 independent alleged trading schemes." (Mot. at 2). That is not, in fact, what the SEC alleges. The Complaint describes "*a* long running fraudulent scheme." (Compl. at ¶ 1, emphasis added). The SEC is not required to allege minute details of every deceptive act Defendants took in furtherance of their scheme. Here, the Complaint alleges the details of the Defendants' fraudulent scheme and misrepresentations with specificity and then, with even more detail, alleges facts concerning two representative examples of the fraud. Regardless, the SEC has properly alleged the who, what, how, when, and where of each instance of the fraud.

Second, Defendants claim that the SEC has failed to allege facts establishing Defendants' scienter for the eight transactions at issue. (*Id*. at 11-14). This is also false. The Complaint's allegations highlight that Defendants: (1) submitted misleading trade instructions; (2) made substantial profits; (3) had motive to earn these illicit proceeds; and (4) took efforts to conceal their misconduct in at least one representative example. Moreover, the Defendants' knowing, repeated misconduct belies any innocent explanation and forms the basis of the Complaint's proper scienter allegations.

Third, Defendants argue that the SEC violates rules against group pleading because it "impermissibly lumps defendants Sabby and Mintz together with respect to its allegations concerning the Appendix Issuers." (*Id.* at 15). Relatedly, Defendants argue that this purported lumping also violates Federal Rule of Civil Procedure 8. This "lumping" argument fails, however, because the Defendants are both liable for the same conduct. Specifically, Mintz is Sabby's control person and primary investor and committed the fraud while acting on Sabby's behalf.

2

Finally, Defendants seek to dismiss a portion of the SEC's claims for relief based on limited misconduct that supposedly falls outside the applicable statute of limitations.  (Mot. at 16-20).  These arguments are without merit.  Indeed, should the SEC prevail on its claims, there is no dispute about its ability to seek injunctive relief, disgorgement, and civil penalties on substantially on all the alleged conduct.  Regardless, Defendants arguments regarding civil penalties and disgorgement are premature and improper at the motion to dismiss stage and should be denied.

At best, the Defendants' Motion is an attempt to restrict – but not eliminate the SEC's claims against the Defendants.  Ultimately, the Complaint has sufficiently pleaded the facts to establish a fraudulent scheme supported by numerous fraudulent transactions as shown in both the Complaint and its Appendix.  As such, the Court should deny the Motion in its entirety.

## ARGUMENT

### I. Legal Standards

"In considering a Motion to Dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *SEC v. Gu*, No. 21-cv-17578, 2022 WL 2753478, at *2 (D.N.J. July 13, 2022) (citations and quotation omitted).  Here, the Complaint must be only "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id*. at *1 (quoting Fed. R. Civ. P. 8(a)(2)).  Because the SEC has alleged fraud, it must state the circumstances of Defendants' fraud "with particularity."  *Id*. at *2.

To establish that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, it must show that the Defendants: "(1) made

material misrepresentations or omissions, or employed a fraudulent device or scheme; (2) with scienter, (3) in connection with the purchase or sale of a security." *SEC v. Hug*, No. 19-cv-16290, 2022 WL 855659, at *5 (D.N.J. March 22, 2022) (citations omitted).

## II.    The SEC Has Provided Sufficient Detail regarding the Eight Appendix Transactions

### A.    *Defendants Concede That the SEC Has Sufficiently Alleged Fraud*

After setting forth the required elements of a Section 10(b) claim, Defendants emphasize that they are moving to dismiss ***only*** the Appendix allegations.  (Mot. at 9, urging the Court to dismiss "claims as to a subset of the allegations in the Complaint").  Defendants thus concede that the SEC has satisfied its pleading burden with regard to its Section 10(b) claims.  In other words, the SEC has sufficiently alleged that Defendants, with scienter, made material misrepresentations and/or employed a scheme in connection with the purchase or sale of a security.  *See Hug*, 2022 WL 855659 at *5.

### B.    *The SEC Is Not Required to Elaborate at Length on Every Fraudulent Transaction*

Defendants argue that the transactions in the eight issuers listed in the Appendix cannot support the SEC's claims that Defendants violated Section 10(b).  But in cases alleging fraud, courts have consistently recognized that pleading the details for each fraudulent transaction is impractical; such complaints could easily be thousands of pages.  As the Eighth Circuit has explained: "Clearly, neither this court nor Rule 9(b) requires [plaintiff] to allege specific details of *every* alleged fraudulent claim forming the basis of [plaintiff's] complaint."  *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (emphasis in original).  Instead, plaintiffs need only supply "*some* representative examples of the[] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors."  *Id.* (emphasis in original).

4

The Third Circuit has an even more relaxed standard.  In *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014), the circuit court observed that while the "Fourth, Sixth, Eighth, and Eleventh Circuits have held that a plaintiff must show 'representative samples' of the alleged fraudulent conduct," other circuits have held "that it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Id*. at 155-56 (citations omitted).  The Third Circuit adopted the more relaxed standard.  *See id*. At 156-57.  In reversing the district court's dismissal of the complaint in *Foglia*, then, the Third Circuit emphasized that "requiring this sort of detail at the pleading stage would be 'one small step shy of requiring production of actual documentation with the complaint, a level of proof . . . significantly more than any federal pleading rule contemplates." *Id*. at 156 (citations omitted).

In sum, then, in the Third Circuit a party can meet its Rule 9(b) obligations by pleading the who, what, when, where, how or by using "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Ramirez v. Sti Prepaid LLC*, 644 F. Supp. 2d 496, 502 (D.N.J. 2009) (quoting *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)).  The Complaint easily meets – and exceeds – this requirement.

Although *Joshi* and *Foglia* are False Claims Act cases, their reasoning applies equally to SEC claims involving numerous examples of deceptive conduct.  *See, e.g.*, *Hug*, 2022 WL 855659, at *8 ("To be clear, rule 9(b) does not require plaintiffs to plead every material detail of the fraud, but it does require that they use alternative means of injecting precisions and some measure of substantiation into their allegations.") (citations and quotations omitted); *SEC v. Bluepoint Inv. Counsel, LLC*, No. 19-cv-809, 2021 WL 719647, at *15 (W.D. Wis. Feb. 24, 2021) ("In cases involving lengthy fraud, courts typically require only representative examples

5

of the fraud to be pleaded with a high level of particularity at the motion to dismiss stage[.]")
(citations and quotation omitted).  This is particularly true for claims alleging, as here, that
Defendants engaged in deceptive conduct violating Rule 10b-5(a) and (c) and Section 17(a)(1)
and (3). *See SEC v. Zouvas*, No. 3:16-cv-0998, 2016 WL 6834028, at *4 (S.D. Cal. Nov. 21,
2016) (Under Rule 9(b), "the SEC is not required to plead detailed evidence concerning each and
every fraudulent act alleged.") (citations and quotation omitted).  In short, where the SEC has
alleged a deceptive scheme or a pattern of fraudulent conduct, it does not have to plead with
specificity every single fraudulent transaction or deceptive act.  Representative examples are
sufficient.

Nor is it even necessary for the SEC to rely on this more relaxed pleading standard for
frauds involving many transactions.  As explained below, the Appendix allegations do actually
allege the who, what, when, where, and how.

C.   *The SEC's Allegations Meet Rule 9(b)'s Requirements*

1.   <u>The SEC Has Sufficiently Alleged Misrepresentations and Deceptive Conduct in
Furtherance of the Fraud</u>

Defendants argue that, for the Appendix transactions, the Complaint "does not contain a
*single* allegation specifically identifying the statements which they contend were false and
misleading." (Mot. at 11, emphasis in original).  They also claim the SEC has "fail[ed] to allege
*any* specific facts demonstrating a purported fraudulent device or scheme." (*Id.*, same).
Elaborating, Defendants insist that the SEC has not alleged who submitted a misleading trade
instruction, "when those instructions were submitted, to whom they were sent, when they were
sent, or even what the instructions were." (*Id.*).  They add that the Complaint does not
"specifically identify a single misrepresentation regarding locate[s]." (*Id.*).

6

None of this is true.  The SEC's allegations concerning the transactions in all ten issuers are sufficiently specific for purposes of Rule 9(b).  First, as explained above, the SEC has alleged Defendants' fraudulent scheme and misrepresentations with specificity, and fully detailed two representative examples.  The transactions in eight additional issuers specified in the Appendix involved false claims regarding long sales when Defendants did not have a long position or own the securities, or short sales facilitated by misrepresentations about obtained locates.  (Compl. ¶ 98).  Further, notwithstanding Defendants' arguments – the SEC supposedly "makes no effort at all to satisfy . . . 9(b)" (Mot. at 2) – the Appendix is full of detailed information.

For example, the Appendix shows that between June 25 and July 6, 2018, Sabby's Warrant Fund submitted orders to an executing broker-dealer for sales of 381,642,544 shares of Issuer 4 that were marked as long sales but, in truth, were short sales, resulting in profits of over $200,000.  These facts specify the misrepresentations and deceptive conduct in furtherance of the fraud – in other words:

- who engaged in the misconduct (the Warrant Fund, managed by Sabby and 39.9% controlled by Mintz, Compl. at ¶ 18);

- who was deceived (the executing broker-dealers);

- the how (submitting orders containing short sales fraudulently mismarked as long sales);

- the what (381,642,544 shares of one issuer);

- the why (making over $200,000 in proceeds); and

- the when (between June 25 and July 6, 2018).

The other allegations continued in the appendix are similarly instructive.

In short, there is absolutely no ambiguity about what Defendants did and why it was wrong.  *See, e.g.*, *Gu*, 2022 WL 2753478 at *3 (allegations met 9(b) "by alleging [the defendant]

(who), engaged in a . . . trading scheme (what) from February through April 2021 (when), by using brokerage accounts at broker-dealers that they misled (where and how), to obtain rebates … (why)"); *SEC v. RRBB Asset Mgmt., LLC*, No. 20-12523, 2021 WL 3047081, at *4 (D.N.J. July 20, 2021) (holding that Rule 9(b) is satisfied where the SEC "alleges that Swartz (the who), used an omnibus trading account to allocate trades unevenly (the what, how, and where), over a certain time period (the when)").[1]

Alone, these allegations easily satisfy Rule 9(b)'s requirements.  But the Appendix information should also be viewed in the context of the SEC's other allegations.  Defendants engaged in a pattern of similar abusive trading that were part of "a fraudulent scheme to circumvent trading rules." (Compl. ¶ 97).  Framed within the context of the broader Complaint – which describes the overarching scheme and features more detailed examinations of two representative examples – the Appendix transactions are more than adequate to "place the defendants on notice of the precise misconduct with which they are charged." *Ramirez*, 644 F. Supp. 2d at 502 (citing and quoting Third Circuit authority to explain Rule 9(b)'s purpose).  At a minimum, the allegations and the Appendix "inject[] precision and some measure of substantiation" into the Complaint.  *Id*. (explaining that Rule 9(b) does not require plaintiffs to

---

[1] To the extent the SEC also alleges "scheme liability" claims under Rule 10b-5(a) and (c), based on deceptive conduct such as submitting false trade requests and concealing the true positions held by Sabby's private funds clients, Rule 9(b) requires it to "set forth what manipulative or deceptive acts were performed, which defendants performed them, when the manipulative or deceptive acts were performed and what effect the scheme had on the securities at issue." *Hug*, 2022 WL 855659, at *8 (citations and quotation omitted).  The SEC does not have to allege each of these deceptive acts in exhaustive detail. *See Zouvas*, 2016 WL 6834028, at *4.  Nonetheless, for the reasons set forth in Section II.C.1, the Complaint easily satisfies these requirements.

"plead the date, place or time of the fraud" so long as they use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud").[2]

In sum, the allegations in the Appendix concerning the transactions in eight additional issuers easily meet Rule 9(b)'s requirements, especially in light of the SEC's other allegations, including two indisputably well-pled representative examples.

### 2.   The SEC Has Alleged Defendants' Scienter as to the Appendix Transactions

"Scienter is a mental state embracing intent to deceive, manipulate or defraud, and can be established by showing recklessness." *SEC v. Rivero*, No. 3:22-cv-1360, 2023 WL 2238700, at *8 (D.N.J. Feb. 27, 2023) (citation and quotation omitted). As Defendants recite, (Mot. at 12), "to establish scienter, the SEC may either (1) identify circumstances indicating conscious or reckless behavior by the defendants or (2) allege facts showing both a motive and a clear opportunity for committing the fraud." *Rivero,* at *8 (same). Moreover, under Rule 9(b), the "SEC need not allege scienter with particularity." *Id.* "Conditions of a person's mind may be alleged generally." *Id.* at *4.

Defendants' argument regarding scienter claims that "the *only* scienter allegation in the Complaint concerning the Appendix Issuers is a conclusory one: a single paragraph stating" Defendants knowingly or recklessly submitted made misrepresentations or engaged in deceptive conduct "'because it was more profitable to do so.'" (Mot. at 12-13, quoting Compl. ¶¶ 98-99) (emphasis in original). Defendants further insist that the Complaint and Appendix do not

---

[2] Defendants rely heavily on *Hug*, in which the court dismissed the SEC's claims under Rule 9(b). 2022 WL 855659, at *8. But in that case, the Complaint did not detail "the months or years the charges were made, where they were made and for what purpose, who they were paid to and in what amounts, or how they were coded on expense spreadsheets . . ." *Id.* Here, in contrast, the body of the Complaint and the Appendix provide specific information about what information the fraudulent orders provided, who submitted and who received the fraudulent orders, as well as why and when Defendants did so.

"*contain[] a single fact*" to support the SEC's scienter allegations.  (Mot. at 13, emphasis in original).

These arguments are without merit.  As a basic matter, the Appendix specifies that, by submitting misleading trade instructions, Defendants made substantial profits.  (Appendix, eighth column).  The motive to earn illicit proceeds, and the obvious opportunity to do so, is sufficient to plead scienter.  *See RRBB Asset Mgmt.*, 2021 WL 3047081, at *5 (Because the SEC "need only plausibly plead scienter," the "question in this case then becomes . . . : did Schwartz have a motive to allocate trades disparately?  The answer is yes; he could profit handsomely off of such trades.  That should be sufficient at this stage."); *Rivero*, 2023 WL 2238700, at *9 ("As for motive and opportunity, money is the motive[.]").

Further pleading scienter, the Complaint alleges that Defendants engaged in these deceptive transactions "because it was profitable to do so and more profitable than following the requirements of Regulation SHO."  (Compl. at ¶ 99).  The Complaint then alleges in the same paragraph how Defendants exploited the opportunity to make their profits – the specific amounts of which are set forth in the Appendix.  The Complaint thus alleges motive, opportunity, and consequently, scienter.

The SEC has also alleged "conscious or reckless behavior."  The Complaint explains that "Mintz . . . had primary responsibility under Sabby's policies and procedures for knowing whether the Private Funds [including the Warrant Fund] had a net short or long position in an issuer's stock and whether each sale of an issuer's stock was a short or long sale."  (Compl. at ¶ 38).  The Complaint then elaborates on Mintz' duties to ascertain holdings before he, or his designee, traded in the Private Funds.  (*Id*. at ¶¶ 39-40).  Thus, Mintz had a duty to know

whether the Private Funds were net short or long, or had a locate.[3]  But at the same time, Sabby and Mintz, as alleged in the Complaint and Appendix, repeatedly misrepresented the Private Funds' true holdings because, as alleged, they were motivated to earn substantial profits.

The Complaint also describes at least 10 instances of this misconduct, making innocent explanations even more implausible.  Moreover, the Complaint, at paragraphs 63-71, provides a detailed explanation of Defendants' efforts to conceal their misconduct in connection with trading in one of the two representative examples.  *See SEC v. Honig*, No. 18-cv-8175, 2021 WL 276155, at *12 (S.D.N.Y. Jan. 27, 2021) (efforts to conceal violations of regulatory requirements support inference of scienter).  As part of that episode, Mintz admitted that he knew the Warrant Fund's true positions before submitting the false trade requests, (Compl. at ¶ 71), providing further context for the misrepresentations in the Appendix.  Mintz, who was a "highly experienced" trader, (Compl. at ¶ 15), had a duty to know, and Defendants did in fact know, the true holdings of their funds before submitting false trade requests.  Accordingly, "no reasonable reading of the Complaint permits a conclusion other than that [Defendants] knew or recklessly disregarded" that their order instructions were false and their conduct was deceptive.  *Rivero*, 2023 WL 2238700, at *9; *see also SEC v. Constantin*, 939 F. Supp. 2d 288, 308 (S.D.N.Y. 2013) ("Representing information as true while knowing it is not . . . [is] sufficient to support a conclusion of scienter.") (citations and quotation omitted).  Here, the SEC has clearly met its pleading standard.

---

[3] A trader has a "locate" when they have borrowed, arranged to borrow, or have reasonable grounds to believe that the securities could be borrowed prior to executing a short sale of a stock.

3. <u>The SEC Has Properly Alleged That Defendants Are Both Liable for the Same Conduct</u>

The SEC has alleged that both Sabby and Mintz are responsible for the alleged misrepresentations and deceptive conduct.  More specifically, Sabby's liability arises from Mintz'.  As the Complaint explains, Mintz "was the principal and managing partner of Sabby . . . and, at all times, had primary responsibility for making investment decisions, . . . for the Private Funds."  (Compl. at ¶ 15).  Accordingly, "[b]ecause of his position, Sabby is liable for Mintz' conduct alleged herein."  (*Id.*).

This is not a situation where the two Defendants may have engaged in disparate conduct.  Instead, it is a standard application of respondeat superior and agency principles:  Sabby is liable because Mintz, its control person and primary investor, made misrepresentations and engaged in deceptive conduct while acting on Sabby's behalf.  *See, e.g.*, *SEC v. Complete Bus. Solutions Group, Inc.*, 538 F. Supp. 3d 1309, 1336 (S.D. Fla. 2021) ("[M]any courts have imposed liability in §10(b) actions based upon respondeat superior and other common-law agency principles.") (quoting *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 201 (1994)); *SEC v. Riel*, 282 F. Supp. 3d 499, 524 (N.D.N.Y. 2017) ("Defendant Riel was the owner and only employee of [defendant] REinvest.  Defendant Riel's actions on REinvest's behalf are imputed to REinvest.") (citations omitted); *SEC v. Tourre*, No. 10-cv-3229, 2014 WL 61864, at *7 n.6 (S.D.N.Y. Jan. 7, 2014) (explaining that Second Circuit precedent "did not alter the long-established principle of *respondeat superior*, which recognizes that corporations may be held liable for the acts of their agents").  The Appendix transactions simply present additional examples of Mintz' fraudulent conduct, imputed to Sabby.

Defendants nonetheless claim that the Complaint "fails to put either Sabby or Mintz on notice of their individual wrongdoing and thus fails to satisfy even the more lenient pleading

requirements of Rule 8." This argument utterly ignores the Complaint's plain terms, which explain the basis for Sabby's liability. (Compl. at ¶ 15). There is no ambiguity about the basis for each Defendant's liability; the Complaint does not suggest that Sabby somehow engaged in misconduct independent of Mintz.

The cases Defendants cite are therefore inapposite. In *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417 (D.N.J. 1999), plaintiffs sued a corporation, an LLP, and approximately 30 individual defendants, including outside accountants, and two different sets of directors. Unlike this case, the *Kennilworth* defendants would necessarily have engaged in different conduct and borne different responsibilities. Yet plaintiffs "lump[ed] the defendants together and ma[d]e conclusory allegations of wrongdoing." *Id.* at 430. In that situation, each defendant did not receive sufficient notice. The facts of *Ingris v. Borough of Caldwell*, No. 14-cv-855, 2015 WL 3613499 (D.N.J. June 9, 2015), are much the same. The *pro se* plaintiff sued a borough and numerous individual and entity defendants, and then sought to file an amended complaint naming an additional 21 individual and entity defendants, including judges, law firms, another borough, and a township. *See id.* at *1 n.1 and *5. The plaintiff "lumped multiple, unrelated defendants together" without explaining what each defendant did wrong. *Id.* at *5.

In *Russo v. Thor Indus., Inc.*, No. 20-cv-10062, 2020 WL 5868801 (D.N.J. Oct. 1, 2020), the court dismissed a thinly pleaded complaint – comprised only of "generalized, conclusory allegations" – that alleged misconduct against only one of the two unrelated entity defendants. *Id.* at *3. And in *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005), a case involving an entity and 10 individual defendants, the issue was that the SEC, according to the court, did not actually allege what one of the defendants did wrong. *See id.* at 724. In sum, none of the cases

cited by Defendants are relevant to this Complaint, where specifically one Defendant's liability is derivative of the other's.

Defendants' attempt to re-frame the same argument as a violation of Fed. R. Civ. P. 8 fares no better.  (Mot. at 16).  As a basic matter, "Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *SEC v. Fierro*, No. 20-cv-2104, 2020 WL 7481773, at *2 (D.N.J. Dec. 18, 2020) (citations and quotation omitted).  For the reasons set forth above, the Complaint easily clears this low bar.  Further, the "group pleading" cases Defendants cite, (Mot. at 16), have no relevance to the SEC's claims against the two Defendants here, in which the Defendants are both liable for the same conduct.

In sum, there is no confusion about the basis for each Defendant's liability, including for the Appendix transactions.  The Court should not credit Defendants' conclusory insistence that they are confused and uncertain, and lack "fair notice of the allegations against them."  (Mot. at 16).  These arguments have no legal merit, and the Complaint easily satisfies the requirements of Rules 8 and 9(b).

### III. Defendants' Arguments as to Relief Based on Time-Barred Conduct are Improper and Premature

Defendants ask the Court to dismiss the SEC's claims for civil penalties and disgorgement based on misconduct that supposedly falls outside the applicable statute of limitations.  (Mot. at 16-20).  The arguments are premature and improper at the motion to dismiss stage and can – and should – be denied without prejudice.  To the extent that they are even valid, Defendants may bring them after their liability has been determined.

The SEC's causes of action – the allegations that Defendants violated several provisions of Exchange Act and Investment Advisers Act of 1940 – are not time-barred.  There is no time

14

limit on when the SEC may bring those claims when, as here, the SEC is seeking remedies that are not considered penalties under 28 U.S.C. § 2462.  The Third Circuit has held that properly issued and valid SEC injunctions are not penalties and, therefore, are not governed by the five-year statute of limitations contained in 28 U.S.C. § 2462.  *SEC v. Gentile*, 939 F.3d 549, 552 (3d Cir. 2019) (finding that injunctions do not fall within the definition of penalties defined in *Kokesh v. SEC*, 581 U.S. 455 (2017)); *see also SEC v. Kameli*, No. 17-c-4686, 2020 WL 2542154, at *7 (N.D. Ill. May 19, 2020) ("SEC actions pursuing a public right and seeking equitable relief are not subject to any limitations period.") (citation omitted); *SEC v. Williams*, 884 F. Supp. 28, 30 (D. Mass. 1995) ("In the context of § 2462, courts have consistently held that the government's claims for equitable relief 'be subject to no time bar.'") (citations omitted); *United States v. Banks*, 115 F.3d 916, 919 (11th Cir. 1997) (in environmental action, explaining the "well-established rule that an action on behalf of the United States in its governmental capacity ... is subject to no time limitation, in the absence of congressional enactment clearly imposing it") (internal quotation omitted); *United States v. Telluride Co.*, 146 F.3d 1241, 1244 (10th Cir. 1998) (same).

Unlike a statute of limitations that bars a cause of action itself, Section 2462 only limits the relief the Commission can obtain if it proves defendants violated the securities laws. *Compare* 28 U.S.C. § 2462 (limiting relief) ("an action … for the enforcement of any civil fine, penalty, or forfeiture ... shall not be entertained unless commenced within five years from when the claim first accrued ...."), *with* 18 U.S.C. § 3301 (limiting a cause of action) ("[n]o person shall be prosecuted, tried, or punished for a securities fraud offense, unless the indictment is found or the information is instituted within 6 years after the commission of the offense").  In

cases – like this one – where the Commission has pled a claim for which at least some relief can be granted, there is no basis to dismiss the Complaint.

Defendants appear to concede this by merely seeking to have certain claims dismissed to the extent the SEC seeks certain relief as to time barred-portions of the misconduct, but a Rule 12(b)(6) "motion to dismiss is addressed to a 'claim' – not to a form of [relief]." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010). Courts have found that "it is generally inappropriate for the Court to limit the remedies available to Plaintiffs on a motion to dismiss and [ ] it is preferable to assess the availability of various remedies after liability is established." *Crestwood Membranes, Inc. v. Constant Servs., Inc.*, No. 3:15-CV-537, 2016 WL 659105, at *5 (M.D. Pa. Feb. 17, 2016) (denying defendant's motion to dismiss plaintiff's demands for relief and quoting *Dicicco v. Citizens Fin. Grp., Inc.*, No. 15-cv-267, 2015 WL 5302767, at *10 (E.D. Pa. Sept. 10, 2015)); *see also SEC v. Drake*, No. 2:17–cv–06204, 2017 WL 6507766, at *7 (C.D. Cal. Dec. 18, 2017) (denying a motion to dismiss based on an argument that the statute of limitations as to certain forms of relief had run and noting that "rulings on remedies are typically made after finding liability— not at the motion to dismiss stage."); *SEC v. Delphi Corp.*, No. 06-cv-14891, 2008 WL 4539519, at *11 (E.D. Mich. Oct. 8, 2008) (rejecting motion to dismiss argument that SEC failed to plead sufficient facts to support disgorgement claim as "premature"); *SEC v. Buntrock*, No. 02 C 2180, 2004 WL 1179423, at *3 (N.D. Ill. May 25, 2004), *aff'd sub nom. SEC v. Koenig*, 557 F.3d 736 (7th Cir. 2009) (same).

Defendants' arguments put the cart before the horse at this stage, where there have been no findings as to liability, and the SEC has not yet proposed civil penalty or disgorgement amounts. Accordingly, Defendants' arguments are premature and should be denied. Defendants will suffer no prejudice for denying their motion to dismiss as to certain claims to the extent they

seek relief based on conduct outside the statute of limitations.  When it is time to assess remedies against Defendants in this action, the Court can evaluate the Parties' arguments about what the appropriate relief, including the appropriate amounts of civil penalties and disgorgement, should be.

## IV.    Conclusion

For all these reasons, the Court should deny the Defendants' Motion in its entirety.

Dated: September 21, 2023                          Respectfully submitted,

Of Counsel:                                  _s/ Daniel J. Maher_____
Amy L. Friedman                              Daniel J. Maher (Mass. Bar ID No. 654711)
Christopher R. Mathews                       Edward J. Reilly (VA Bar ID No. 82562)
                                             U.S. SECURITIES AND EXCHANGE COMMISSION
                                             100 F Street NE
                                             Washington, DC 20549
                                             Phone: (202) 551-4737 (Maher)
                                             Email: Maherd@sec.gov (Maher)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2023, I served a copy of the foregoing by email on:

Aari Itzkowitz
Wilk Auslander LLP
825 8th Ave.
Suite 2900
New York, NY 10019
aitzkowitz@wilkauslander.com
(212) 981-2300

         /s/ Daniel Maher
        Daniel Maher